IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cr-83-MR-WCM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| SEAN CHRISTOPHER WILLIAMS | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant's Motion to Suppress (Doc. 24), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

## I. Relevant Procedural Background

On December 5, 2023, a Bill of Indictment was filed charging Defendant with child pornography offenses pursuant to 18 U.S.C. §§ 2252A(a)(1) and 2252A(a)(5)(B). Doc. 1.

Defendant made an initial appearance on February 25, 2025 and was arraigned on February 28, 2025.

On November 17, 2025, Defendant filed the Motion to Suppress seeking the suppression of three categories of evidence: 1) certain verbal statements made by Defendant, 2) evidence obtained from electronic devices pursuant to a state search warrant related to a narcotics investigation (the "Narcotics Warrant," Doc. 24-1), and 3) evidence obtained from electronic devices

1

pursuant to a state search warrant related to child sexual abuse material ("CSAM") (the "CSAM Warrant," Doc. 24-2).[1]

The Government has responded and Defendant has replied, Docs. 27, 30, and a status conference was conducted on January 9, 2026.

## II. Evidentiary Hearing

"[A]n evidentiary hearing is not always required to resolve a motion to suppress." United States v. Griffin, 811 F. App'x 815, 816 (4th Cir. 2020) (per curium) (citing Fed. R. Crim. P. 12(c)).

During the status conference, the parties agreed that, in light of information in the Government's response, the Motion to Suppress is moot to the extent it seeks the suppression of Defendant's verbal statements.[2] Since Defendant's remaining arguments pertain to the validity of the Narcotics Warrant and the CSAM Warrant, an evidentiary hearing is not necessary. See United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996) ("When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant"); United States v. Reed, No. 11-20288, 2011 WL 5408361, at *1 (E.D. Mich. Nov. 7, 2011)

---

[1] The Motion to Suppress notes that a federal search warrant was subsequently issued. Doc. 24 at 7. The Motion to Suppress does not challenge that warrant.

[2] The parties also confirmed that, while the undersigned issued the federal warrant referenced by the Motion to Suppress, the parties do not object to this Court considering the Motion to Suppress.

2

("As the Court's consideration of Defendant's Motion requires only an examination of the information contained within the 'four corners' of the search warrant affidavit, oral argument on the Motion is unnecessary and no hearing shall be held"); United States v. Francois, 715 F.3d 21, 32 (1st Cir. 2013) ("[A] hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.").

## III. Factual Background[3]

### A. The Narcotics Warrant

Officer J. Stoller of the Western Carolina University Police Department ("WCUPD") submitted an application and supporting affidavit (the "Narcotics Warrant Application") for the Narcotics Warrant, which included the following information:

On April 29, 2023, at about 2:13am, WCUPD officers encountered a 2005 Subaru Baja (the "Vehicle") that was parked in a closed parking lot. The Vehicle was running and was parked in a handicapped parking space without a handicap placard, and the driver's side window was down. Doc. 24-1 at 5.

---

[3] The parties' briefing appears to include some facts that are not stated in the materials that were submitted to the state judicial authorities when law enforcement was seeking the Narcotics Warrant and the CSAM Warrant. As the validity of those warrants are the remaining issues raised by the Motion to Suppress, the facts stated in this Memorandum are limited to those presented to the state judicial authorities.

3

Officer Charles Gooden approached the Vehicle, and observed that an individual, who was later identified as Defendant, appeared to be asleep in the driver's seat. Officer Gooden also observed a small silver metal case in the passenger seat with a metal cup that appeared to contain some sort of white substance and a razor blade.

Officer Gooden woke Defendant, who "sat up so quickly when he saw that it was the police, he hit the horn." Id. Defendant became nervous, began reaching around, and appeared to be trying to conceal something.

Officer Gooden then asked Defendant to step out of the Vehicle. Defendant asked if he could stay inside the Vehicle, but Officer Gooden ordered Defendant out of the Vehicle. Defendant stated "please don't do this" several times and kept putting his hands into his pockets despite being told not to do so.

Officer Gooden then handcuffed Defendant. As he was being handcuffed, Defendant stated that there were drugs in the Vehicle. During a search of Defendant's person, a glass pipe with residue was found in Defendant's front left pocket.

The Vehicle was then searched, and 411 grams of methamphetamine, 216 grams of cocaine, $100,831.00 in cash, and several sets of scales and

4

ledgers[4] were discovered and seized. Id. Additionally, "many hard drives, computers, and thumb drives" were observed in the Vehicle, although only 2 hard drives, 6 thumb drives, and 1 SD card were seized. Id.

In the Narcotics Warrant Application, Officer Stoller attested, based on his training and experience, that it is common for individuals "using, selling, or distributing illegal narcotics to keep ledgers, record [sic], photographs, and other information pertaining to ["trafficking methamphetamine, cocaine"] on hard drives, thumb drives, computers, and other electronic devices…." Id. at 6.

The Narcotics Warrant was issued by a state magistrate on May 3, 2023 and authorized the search of 23 electronic devices including hard drives, thumb drives, an SD card, and computers for evidence of drug related crimes. Id. at 4.

The Narcotics Warrant was executed on May 8, 2023. Id. at 1.

B.    The CSAM Warrant

Detective Steven D. Lillard submitted an application and supporting affidavit (the "CSAM Warrant Application") for the CSAM Warrant, which included the following information:

On May 8, 2023, Detective Lillard was processing one of the thumb drives (the "Thumb Drive") as part of the search authorized by the Narcotics

_____

[4] These ledgers were not described in further detail but since they were found in a "silver bag" along with a large amount of cash and "several sets of scales," the undersigned presumes they were in paper form. Doc. 24-1 at 5.

5

Warrant. Doc. 24-2 at 8. While doing so, Detective Lillard discovered a text file entitled "backup changes.txt" that contained the following statement: "i sorted the random pics into folders in –Backup June 17/sorted cp may 24 ams girls is in LS folder in D drive." Id. Based on his training and experience, Detective Lillard believed the term "cp" referred to child pornography and that the initials "LS" were associated with a series of child pornographic materials.

Detective Lillard also discovered three other text files that contained what appeared to be dark web links that could be accessed via a special browser as a means of sharing child pornography.

Detective Lillard reviewed the file path associated with the four text files. It appeared that all four files were in a main folder titled "cp" and that the folder structure of the thumb drive included other names associated with CSAM. Id. at 9.[5] Detective Lillard then paused his investigation to prepare the CSAM Warrant Application.

Further in the CSAM Warrant Application, Detective Lillard explained, based upon his "training and experience investigating child sexual abuse and exploitation crimes," that it was "common for collectors of child pornographic materials to organize their collection into a custom folder structure" similar to that found on the Thumb Drive and that it was "plausible that similar

_____

[5] The CSAM Warrant Application included a screenshot of the file tree and the file names, some of which were explicit. See Doc. 24-2 at 9.

structures and content would be found on the existing devices" that were in Defendant's possession. Id. at 10.

The CSAM Warrant was issued and executed on May 9, 2023 and authorized the search of the same electronic devices for evidence of the North Carolina crime of third degree sexual exploitation of a minor. Id. at 2, 10.

## IV. Discussion

### A. The Narcotics Warrant

Defendant argues that the Narcotics Warrant Application failed to establish a sufficient nexus between the seized devices and evidence of drug related offenses, and that the Narcotics Warrant was overbroad. Doc. 24 at 1.

#### 1. Nexus

The Fourth Circuit has explained that "a judicial officer issuing a search warrant must simply make a practical, commonsense determination—based on the totality of the circumstances revealed in the affidavit—of whether there is a substantial likelihood that evidence of a crime will be found in a particular place." United States v. Allen, 631 F.3d 164, 173 (4th Cir. 2011). "'[T]he nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence.'" Id. (quoting United States v. Richardson, 607 F.3d 357, 371 (4th Cir. 2010)); see also United States v. Wienke, 733 F. App'x 65, 69 (4th Cir. 2018) ("Whether such a nexus exists turns on 'the nature of the item and

7

the *normal inferences* of where one would likely keep such evidence.'") (quoting

United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988) (emphasis in

original)); United States v. Orozco, 41 F.4th 403, 410 (4th Cir. 2022) ("Indeed,

a magic-words requirement for warrant affidavits runs headlong into the

Supreme Court's clear instruction that we should not add '[t]echnical

requirements of elaborate specificity' into the warrant-application process, and

'should not invalidate warrants by interpreting affidavits in a hypertechnical,

rather than commonsense, manner.' The affidavit … need not directly link the

evidence sought with the place to be searched.") (internal citations omitted)).

Here, Defendant argues that although the Narcotics Warrant

Application reasonably suggested that Defendant was "involved with drugs,"

it lacked sufficient facts to connect Defendant's drug activity to any particular

electronic device.

Whether the Narcotics Warrant Application established a sufficient

nexus between Defendant's alleged drug activity and the electronic devices

found in the Vehicle presents a close call.

The Narcotics Warrant Application explained that officers had

discovered indicia of significant drug trafficking—including 411 grams of

methamphetamine, 216 grams of cocaine, $100,831.00 in cash, and several sets

of scales and ledgers—in the Vehicle in which Defendant had been sleeping.

And the Fourth Circuit has stated that "crimes like drug trafficking" involve

"coordination" such that it "may be reasonable to believe that [the suspect's] cellphone will contain evidence of his crimes." <u>United States v. Henderson</u>, 136 F.4th 527, 532-33 (4th Cir. 2025) (internal citations and quotation marks omitted); <u>United States v. Davis</u>, 94 F.4th 310, 320 (4th Cir. 2024) ("Here, given the substantial quantities of controlled substances that were found on [the defendant's] person and in his bedroom, the extent to which they were packaged for distribution, the evidence of drug trafficking found elsewhere in the common areas of the residence, and the known and obvious connection between drug trafficking and the use of cell phones, the officers executing the search had probable cause to associate the [phone] with criminal activity.") (internal citations and quotation marks omitted).

Yet, the Narcotics Warrant Application did not include any specific facts to indicate that Defendant had used a cell phone—let alone other electronic devices—in connection with the drug crimes under investigation.

Next, an issuing judicial official is entitled to rely on an officer's training and experience when making a probable cause determination with respect to a search warrant application, <u>see</u> <u>United States v. Darnell Williams</u>, 548 F.3d 311, 319-20 (4th Cir. 2008) (reversing the district court's suppression order because it "erroneously discounted [the officer's] assertion of training-and-experience-based knowledge" to tie the defendants' drug activities to their residences), and in this case Officer Stoller stated that it is common for

individuals "using, selling, or distributing illegal narcotics to keep ledgers, record [sic], photographs, and other information pertaining to ["trafficking methamphetamine, cocaine"] on hard drives, thumb drives, computers, and other electronic devices" Doc. 24-1 at 6.

However, the Narcotics Warrant Application provided little information about Officer Stoller's training and experience related specifically to controlled substances investigations. It also did not explain why evidence of drug trafficking, such as ledgers, would likely be found on the subject electronic devices when ledgers (presumably in paper form) had previously been located elsewhere in the Vehicle.

A reviewing court "must accord 'great deference' to the magistrate's assessment of the facts presented to him," United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990) (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)), such that "the task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728 (1984) (citing Illinois v. Gates, 462 U.S. 213, 214 (1983)); see also Orozco, 41 F.4th at 407 (Where a "neutral and detached magistrate" has found probable cause exists to support the issuance of a warrant, that initial determination of probable cause is entitled to "great deference.") (quoting Gates, 462 U.S. at 236 & 240).

Nonetheless, on the record presented, the undersigned finds Defendant's argument as to the lack of probable cause to be persuasive. See United States v. Dove, No. 3:23-CR-151, 2025 WL 2427703, at *5 (W.D.N.C. Aug. 22, 2025) (finding that an affidavit in support of a state search warrant allowing the search of the defendant's phone lacked a sufficient nexus between the subject phone and narcotics and firearm offenses where the affiant stated only his conclusory "belie[f]" that the defendant used the phone to carry out the charged offenses, spoke "only in generalities about how information on a cell phone 'can be evidence in a law enforcement investigation,'" did not tie that "broad statement to drug trafficking or firearms offenses," never discussed the affiant's experience "investigating such crimes," and "never even hinted at a connection between [the defendant's] conduct and [the defendant's] phone.").

### 2. Overbreadth/Particularity

As for Defendant's next argument, the Fourth Amendment provides that warrants must "particularly describe[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; see also United States v. Curtis Williams, 592 F.3d 511, 519 (4th Cir. 2010) ("At its core, the Fourth Amendment protects against general warrants that authorize 'exploratory rummaging in a person's belongings ... by requiring a particular description of the things to be seized.'") (quoting Andresen v. Maryland, 427 U.S. 463, 480 (1976)). "[A] warrant may satisfy the particularity requirement *either* by

11

identifying the items to be seized by reference to a suspected criminal offense or by describing them in a manner that allows an executing officer to know precisely what he has been authorized to search for and seize." United States v. Blakeney, 949 F.3d 851, 862 (4th Cir. 2020) (emphasis in original)); see also United States v. Jones, 31 F.3d 1304, 1313 (4th Cir. 1994) (holding that a warrant which "confine[d] the executing inspectors' discretion by allowing them to seize only evidence of a particular crime" had "sufficient particularity to satisfy the Fourth Amendment"); White v. City of Greensboro, 586 F. Supp.3d 466, 485 (M.D.N.C. 2022) ("The Fourth Circuit has recognized 'a warrant need not — and in most cases, cannot — scrupulously list and delineate each and every item to be seized' because it is frequently 'impossible for law enforcement officers to know in advance exactly what ... records the defendant maintains or how the case against him will unfold.'") (quoting United States v. Cobb, 970 F.3d 319, 327-28 (4th Cir. 2020), as amended (Aug. 17, 2020), cert. denied, 141 S.Ct. 1750, 209 L. Ed. 2d 513 (2021) (citation omitted)).

Here, Defendant argues that the Narcotics Warrant improperly allowed a "general search of twenty-three electronic devices for any evidence of criminal activity" because it authorized law enforcement to seize "(1) any ledgers, receipts, or information consistent with the use or sales of controlled substances; (2) all records such as text messages, MMS messages,

photographs, GPS locations, video data, web site searches, social media posts and social media messages stored [and] (3) any other data showing evidence of criminal activity." Doc. 24 at 14; see also Doc. 24-1 at 4.

However, the Narcotics Warrant Application sought authorization to seize "[a]ll electronic contents to include photographs, ledgers, names, phone numbers, social media content, or any other electronic evidence *of the illegal narcotics use, sale, distribution he is charged with*" and "to search for and seize evidence related to violation of G.S. 90-95 possession of controlled substance and G.S. 90-113 possession of drug paraphernalia." Doc. 24-1 at 2 (emphasis added) & 3. In addition, the Narcotics Warrant listed seven particular crimes related to drug activity. Doc. 24-1 at 4. See United States v. Manafort, 323 F. Supp.3d 795, 802-03 (E.D. Va. 2018) (concluding that a search warrant met the Fourth Amendment's particularity requirement because it required that the seizures be related to a list of specific crimes and "identified an illustrative list of the records at issue").

Accordingly, the undersigned does not find the Narcotics Warrant to be overbroad.

### 3. Good Faith Exception

The Government argues, though, that even if the Narcotics Warrant was invalid, law enforcement was permitted to rely on it in good faith pursuant to United States v. Leon, 468 U.S. 897 (1984).

*Leon* "teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) (quoting Leon, 468 U.S. at 922 n.23).

"This 'good faith' exception will be applied except in four limited situations: (1) when the affiant based his application on knowing or reckless falsity; (2) when the judicial officer wholly abandoned his role as a neutral and detached decision maker and served merely as a 'rubber stamp' for the police; (3) when the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant was so facially deficient that the executing officers could not reasonably have presumed that the warrant was valid." United States v. Wellman, 663 F.3d 224, 228–29 (4th Cir. 2011) (citing United States v. Doyle, 650 F.3d 460, 467 (4th Cir. 2011)) (quoting United States v. DeQuasie, 373 F.3d 509, 519–20 (4th Cir. 2004)).

"Typically, an officer's reliance on a magistrate's decision to issue a warrant will be deemed objectively reasonable." United States v. Thomas, 908 F.3d 68, 72 (4th Cir. 2018). "But as Leon makes clear, when a supporting affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' then an officer cannot be found to have

reasonably relied on the resulting warrant, and suppression remains the appropriate remedy." Id. The Fourth Circuit has explained that "[t]his is a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place." United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002).

In this case, law enforcement's reliance on the Narcotics Warrant was not unreasonable.

Defendant was found, apparently asleep, in a Vehicle that contained significant amounts of controlled substances as well as other indicia of drug trafficking. And while the undersigned finds, under the specific facts presented here, that the Narcotics Warrant Application did not provide an adequate basis to support a belief that evidence of drug crimes would be found on the electronic devices, searches of cell phones and other electronic devices for evidence of drug crimes have been upheld in other circumstances. See e.g., United States v. Burgess, 576 F.3d 1078, 1090-92 (10th Cir. 2009) (affirming the denial of a suppression motion involving a search for "computer records" and "items of personal property which would tend to show conspiracy to sell drugs, including pay-owe sheets, address books, rolodexes, pagers, firearms and monies" because the search, as it related to the computer "was limited to the kind of drug and drug trafficking information likely to be found on a computer"); United States v. Wrenn, No. 22-12621, 2023 WL 4146439, at *5-6 (11th Cir.

June 23, 2023) (affirming the denial of a suppression motion related to the seizure of a laptop during an investigation for the possession of marijuana plants and a marijuana "grow operation" based on the investigator's statement that, based on his training and experience, "it was common for criminals involved in illicit drug operations to keep on their phones or computers ledgers, correspondence, and images regarding the drugs they sold and the people to whom they sold their drugs"); United States v. Ruiz-Ruiz, No. 22-232 (RAM), 2025 WL 1378659, at *22 (D.P.R. May 13, 2025) (denying a suppression challenge to the sufficiency of probable cause related to a search warrant for electronic devices because "normal inferences as to where a criminal would hide evidence of his crime" supported seizure of electronic devices where officers seized "roughly $500,000, marijuana plants, pills [], various electronic devices, a bill counting machine with a monitor, a United States passport, cash labels, two U.S.P.S. receipts, CBP documents, a digital pocket scale, and one plastic wrapping roll" in the defendant's residence) (citations omitted); United States v. Coffey, No. 21-CR-00538 (JMA) (ARL), 2023 WL 8891508, at *11 (E.D.N.Y. Dec. 26, 2023) ("For example, the affidavit explains that Special Agent Flynn 'personally participated in the execution of search warrants and in numerous controlled deliveries of narcotics' where he 'frequently found' evidence of narcotics trafficking, 'such as cell phones, tablets, and computers.' Special Agent Flynn also attests that—'based on [his] experience and

16

training'—the nature of narcotics trafficking necessarily would involve those electronic devices. Courts within this Circuit concur, routinely recognizing an association between electronic devices and narcotics trafficking—such that electronic devices are essentially the 'tools of the trade.'"); but see Dove, 2025 WL 2427703.

## B. The CSAM Warrant

Defendant argues that Detective Lillard exceeded the bounds of the Narcotics Warrant by "abandoning the search for drug distribution evidence and looking for evidence of child pornography." Doc. 24 at 1. Defendant also contends that the CSAM Warrant Application failed to establish a sufficient nexus tying any device other than the Thumb Drive to evidence of CSAM.

### 1. Discovery of the Material Leading to the CSAM Warrant

Defendant contends that when Detective Lillard "acquired the information suggesting possible child pornography, he necessarily relied on the third clause [of the Narcotics Warrant allowing seizure of "any other data showing evidence of criminal activity"], since he was acting beyond the scope of the [Narcotics Warrant's] first two clauses" and that Detective Lillard's actions indicate that he was improperly "digging through text files" to obtain the evidence he subsequently used to obtain the CSAM Warrant. Id. at 15.

There is no indication, however, that the Narcotics Warrant did not allow such a review. See Cobb, 970 F.3d at 329 (concluding that a search warrant

17

authorizing a search of electronic files for evidence related to a murder implicitly authorized officers to open each file to view its contents and that "more specificity was not required under the Fourth Amendment, nor was limiting the scope of the computer search practical or prudent under the circumstances of this investigation."); Curtis Williams, 592 F.3d at 521-22 ("To conduct that search, the warrant impliedly authorized officers to open each file on the computer and view its contents, at least cursorily, to determine whether the file fell within the scope of the warrant's authorization—*i.e.,* whether it related to the designated Virginia crimes of making threats or computer harassment. To be effective, such a search could not be limited to reviewing only the files' designation or labeling, because the designation or labeling of files on a computer can easily be manipulated to hide their substance.") (citing Andresen, 427 U.S. at 482 n.11).

Further, the incriminating character of the material Detective Lillard found on the Thumb Drive was immediately apparent for purposes of the plain view doctrine. See Horton v. California, 496 U.S. 128, 136-37 (1990) (a law enforcement officer may seize an item in plain view when: (1) the officer did not violate the Fourth Amendment "in arriving at the place from which the evidence could be plainly viewed"; (2) the object's "incriminating character" was "immediately apparent"; and (3) the officer had "a lawful right of access to the object itself") (internal quotation marks and citations omitted); Curtis

18

Williams, 592 F.3d at 521-22 (stating that "[o]nce it is accepted that a computer search must, by implication, authorize at least a cursory review of each file on the computer, then the criteria for applying the plain-view exception are readily satisfied" and that "when the officer then comes upon child pornography, it becomes 'immediately apparent' that its possession by the computer's owner is illegal and incriminating").

### 2. Nexus

Defendant contends that while the CSAM Warrant Application "may have included facts sufficient to establish probable cause to search" the Thumb Drive, it failed to establish a sufficient nexus between the evidence on the Thumb Drive and the other twenty-two devices. Doc. 24 at 17.

The CSAM Warrant Application, however, did not need to demonstrate with "absolute certainty" that "evidence of a crime [would] be present in [the place to be searched]." United States v. Sueiro, 59 F.4th 132, 140 (4th Cir. 2023). Rather, a judicial officer reviewing a requested warrant must evaluate "the 'totality of the circumstances' to determine whether there is a 'substantial likelihood' that evidence of a crime will be found in the place to be searched." Id.

Here, the CSAM Warrant Application described Detective Lillard's discovery of possible CSAM on the Thumb Drive as well as Detective Lillard's years of law enforcement experience, including his training and experience

19

related to computer investigations and CSAM investigations. The CSAM Warrant Application also described how it is "common for collectors of child pornographic materials to organize their collection into a custom folder structure" and set forth Detective Lillard's belief that because the Thumb Drive included "custom folders that appear[ed] to be user created . . . it [was] plausible that similar structures and content would be found on the existing devices that were in [Defendant's] possession." Doc. 24-2 at 10. Finally, the file tree showed various folders with graphic names and suggested that evidence could be found in other places. Doc. 24-2 at 9. See United States v. Bosyk, 933 F.3d 319, 322, 325-26 (4th Cir. 2019) (affirming the denial of a motion to suppress where the search warrant authorizing the seizure of a variety of computers and electronic devices from the defendant's residence was based on an investigation that showed someone using the defendant's IP address made a "single click" on a link directing the user to online CSAM, which link had been posted the same day and contained a message "describing [the link's] contents unmistakably as child pornography"); United States v. Kuhn, No. 4:24-cr-23-D, 2025 WL 3204531, at *22-23 (E.D.N.C. Nov. 17, 2025) (denying a motion to suppress involving a search warrant covering the defendant's cell phone and various chat applications therein because law enforcement was "justified in searching other chat applications on [the defendant's] phone given the 'fair probability' that [the defendant] used them to produce, distribute,

receive, or possess child sexual abuse material" even though investigators only described evidence of the defendant's use of certain chat applications in the warrant's affidavit).

### 3. Good Faith Exception

As with the Narcotics Warrant, the Government argues that even if the CSAM Warrant was invalid, law enforcement officers were permitted to rely on it in good faith pursuant to United States v. Leon, 468 U.S. 897 (1984).

However, the undersigned finds that it is unnecessary to address this argument. As described above, the undersigned concludes that the CSAM Warrant was valid. Further, in his reply, Defendant appears to address the applicability of Leon only with respect to the Narcotics Warrant.

## V. Recommendation

For the reasons stated above, the undersigned **RESPECTFULLY RECOMMENDS** that Defendant's Motion to Suppress (Doc. 24) be **DENIED**.

Signed:
2/10/2026

W. Carleton Metcalf
United States Magistrate Judge

21

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(B), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).